IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ELIZABETH M. BILLER                                                              PLAINTIFF

V.                                    NO. 12-2073

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Elizabeth M. Biller, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed her applications for DIB and SSI on December 30, 2009, alleging disability since April 15, 2007, due to "1. Paroxysmal kenesiogenic chorea 2. Seizures 3. Slow Learner." (Tr. 144-146, 152-156, 170, 174).[2] An administrative hearing was held on November 10, 2010, at which Plaintiff appeared with counsel, and she and her mother testified. (Tr. 40-83).

By written decision dated March 21, 2011, the ALJ found that since April 15, 2007, the

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Chorea - The occurrence of a variety of continual, rapid, highly complex, jerky, dyskinetic movements that look well-coordinated but are actually involuntary. Dorland's Illustrated Medical Dictionary 354 (32nd ed. 2012).

onset date of disability, Plaintiff had an impairment or combination of impairments that were severe - seizure disorder; borderline intellectual functioning (BIF); and cognitive disorder. (Tr. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found that Plaintiff had the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid all hazards, to include driving as part of the work, and is limited to simple, routine, and repetitive tasks.

(Tr. 21). With the help of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing her past relevant work as a housekeeper, and alternatively, that there were other jobs Plaintiff would be able to perform, such as child care attendant; cafeteria attendant; and counter attendant. (Tr. 23-24). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on September 30, 2011. (Tr. 7-10). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**I.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ erred in failing to find Plaintiff's impairments met or equaled a listing; 2) The ALJ erred in his treatment of the opinions of Dr. Shannon Brownfield and Dr. Vann Smith; and 3) The ALJ's findings are not supported by substantial evidence. (Doc. 8).

#### A.   Whether Plaintiff's Impairments Meet or Equal a Listing:

Plaintiff argues that her impairments meet or equal the 12.05(C) and 12.05(D) listings. "When trying to establish that the Listing 12.05C requirements have been met, the claimant must also meet the requirements in the introductory paragraph of Listing 12.05." Lewell v. Astrue, 2013 WL 950601 *3 (No. 12-5023 W.D.Ark., March 11, 2013), citing Maresh v. Barnhart, 438 F.3d 897, 899 (8th Cir. 2006).  Those requirements clearly include demonstrating that the claimant suffered "deficits in adaptive functioning" and that those deficits "initially manifest during the developmental period [before age 22]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; Cheatum v. Astrue, 388 Fed. Appx. 574, 576 (8th Cir. 2010)(citations omitted).   Plaintiff was born in 1987, and therefore, the evidence must support a finding that Plaintiff was "mentally retarded" prior to 2009.

Plaintiff was diagnosed with paroxysmal kinesogenic chorea on May 14, 2001, at the pediatric neurology clinic at Wake Forest University Baptist Medical Center. (Tr. 406). On June 17, 2002, the Wake Forest clinic noted that Plaintiff had been treated with carbamazopine for approximately two years and had a favorable response. (Tr. 404). Nevertheless, complete resolution of her seizures has not occurred. Dr. Cesar C. Santos, the attending physician at the pediatric neurology clinic, noted that there had been far fewer seizures since she had been on the carbamazepine and that the dosage had been increased at the last visit. (Tr. 404). He reported on June 17, 2002, that Plaintiff had not had a seizure "except for one three weeks ago due to the fact that she missed her medication on the day of the seizure. If she takes her medication regularly, there is no problem." (Tr. 404).

On January 13, 2004, Byron Dickinson, PsyD., prepared a Psychological Report, wherein he found Plaintiff's Verbal Scale to be 65; her Performance Scale to be 79; and her Full Scale IQ to be 70, and in his conclusion, he reported that Plaintiff's scores "suggest overall intellectual ability to be in the borderline range." (Tr. 277).

On February 12, 2010, Nancy A. Bunting, Ph.D., evaluated Plaintiff and prepared an Intellectual Assessment and Adaptive Functioning report. (Tr. 280-282). In the report, Dr. Bunting found Plaintiff's Verbal IQ score to be 70; her performance IQ was 83; and her full scale IQ was 74. (Tr. 280). Although she found that there were no indications of exaggeration, she reported that the intellectual assessment results did not appear to be an accurate and valid representation of her present level of functioning because of seizure activity that Plaintiff reported only later on. (Tr. 280). She reported that on the WAIS-III, the full scale IQ of 74 fell in the borderline range of intellectual functioning, and that there was a significant difference

between the Verbal IQ score of 70 and the Performance IQ score of 83. (Tr. 281). Dr. Bunting concluded that Plaintiff's adaptive functioning was not consistent with a diagnosis of Mental Retardation. (Tr. 282). Although she said that her score of 70 would generally qualify, she found it significant that Plaintiff had a seizure that morning, and felt that this had to have depressed her scores. "Without the unregulated seizure activity her scores would have been better. If she is generally on medication (when she is not pregnant), she seems to be able to hold a fulltime job as indicated by her history." (Tr. 282).

On February 22, 2010, Dr. Winston Brown completed a Psychiatric Review Technique form. (Tr. 285-297). Dr. Brown concluded that Plaintiff did not suffer from a medically determinable impairment. (Tr. 285, 297).

On February 24, 2010, Dr. Shannon Brownfield conducted a General Physical Examination. (Tr. 299-303). Dr. Brownfield diagnosed Plaintiff with pregnancy, and a seizure disorder by history (focal - noncomplex) on no meds. (Tr. 303). He reported that assuming the seizure disorder was real, Plaintiff had globally moderate to severe limits, especially with pregnancy. (Tr. 303).

On June 1, 2010, Plaintiff presented to Baxter Regional Medical Center, 39-plus weeks pregnant. At that time, the medical report indicates that she did have a history of seizure disorder, but "has not had a seizure and has not taken any medicine since 2006." (Tr. 393). The report noted that Plaintiff smoked occasionally, approximately 4 cigarettes per day. (Tr. 393). The report also indicated that Plaintiff denied any history of mental retardation. (Tr. 393).

On September 1, 2010, Dr. Vann Smith conducted a Neuropsychological Evaluation, and reported that Plaintiff's WAIS-R Verbal IQ was 85; her performance IQ was 82; and her Full

Scale IQ was 83. (Tr. 376). Dr. Smith diagnosed Plaintiff with cognitive disorder and borderline intellectual function. (Tr. 378).

In the present case, there was no evidence that Plaintiff experienced deficits in adaptive functioning prior to 2009. Dr. Dickinson stated that Plaintiff's adaptive behavior skills were rated in the low average range. (Tr. 277). By 2005, Plaintiff was 39 -2/7 weeks pregnant. (Tr. 398). In 2007, Plaintiff was pregnant again, and in May, delivered another child. (Tr. 395). At that time, plaintiff was smoking approximately ½ pack of cigarettes per day. (Tr. 343). In November of 2009, Plaintiff was once again pregnant and requesting prenatal care and smoked less than one pack per day. (Tr. 315).

Only one evaluator, Dr. Bryan Dickinson, tested Plaintiff's IQ prior to 2009, and found Plaintiff's verbal scale to be 65, and her full scale IQ to be 70. Even then, he referred to Plaintiff's mental functioning as in the borderline range.

In his decision, the ALJ stated that he considered Plaintiff's mental impairment under the requirements of listing 12.05. He further stated:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

(Tr. 19).

The ALJ then discussed whether Plaintiff met the additional requirements in paragraphs A, B, C, or D. He concluded that: paragraph A was not met because Plaintiff was independent with all aspects of self-care and she could follow directions; paragraph B was not met because Plaintiff did not have a valid verbal, performance, or full scale IQ of 59 or less; paragraph C was

AO72A
(Rev. 8/82)

not met because although Plaintiff had a verbal IQ score of 70 during testing by Dr. Bunting, the score was noted as invalid and "depressed" because Plaintiff reportedly had a seizure the day of testing; and paragraph D was not met because even if Plaintiff had a valid verbal, performance, or full scale IQ of 60 through 70, there must also be a marked restriction of at least two of the following: activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that Plaintiff did not suffer from any marked restrictions in the aforementioned activities.

The Court finds that there is sufficient evidence to support the ALJ's findings that Plaintiff's mental impairments did not meet or medically equal Listing 12.05.

**B.     RFC Findings and Treatment Given to Opinions of Dr. Brownfield and Dr. Smith:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to

determine how those limitations affect his RFC." Id.

In his decision, the ALJ addressed Dr. Brownfield's consultative physical examination as follows:

> During consultative physical examination performed in February 2010, the claimant complained of having daily seizures, but was not taking any medications due to a pregnancy. Examination findings were within normal limits and diagnosis was seizure disorder by history. (Exhibit 5F).

(Tr. 19). In his evaluation, Dr. Brownfield concluded that assuming Plaintiff's seizure disorder was real, she would have globally moderate to severe limitations, especially with pregnancy. (Tr. 303).

With respect to Dr. Smith's conclusions, the ALJ stated as follows:

> The undersigned concurs with Dr. Vann Smith's diagnosis of BIF and cognitive disorder. However, the doctor's opinion that the claimant is disabled due to significant mental limitations is afforded no weight because it is inconsistent with the record, including the claimant's testimony and the fact that she has worked in the past. In addition, the doctor's opinion was based on one examination, the record does not show that he has a treating relationship with the claimant, and his opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive.

(Tr. 23).

The ALJ concurred with Dr. Smith's diagnosis of BIF and cognitive disorder, but did not concur with Dr. Smith's conclusion that Plaintiff was disabled. The Court is of the opinion that the ALJ thoroughly explained why he did not accord controlling weight to Dr. Smith's opinion about Plaintiff's ability to work.

With respect to Dr. Brownfield's opinion, the Court finds that the ALJ discussed at length the limitations imposed by Plaintiff's untreated seizure disorder, and, as Defendant stated in his brief, placed the responsibility for the outcome of her noncompliance where it belongs, on

Plaintiff. The Court is of the opinion that the record as a whole, supports the treatment the ALJ gave to Dr. Smith and Dr. Brownfield.

The Court also finds it noteworthy that Plaintiff indicated that she did not take her anti-seizure medication because she was pregnant or breast-feeding, but there is no indication that she ever asked a physician if there was some type of anti-seizure medication she would be able to take while pregnant or breast-feeding. In addition, although Plaintiff would like the Court to believe she was concerned about the baby's health, she nevertheless continued to smoke while she was pregnant.

Plaintiff indicates even while on medication, she continued to have seizures. However, the medical records do not support this statement. Dr. Santos indicated that if Plaintiff took her medication regularly, there was no problem. (Tr. 404). Plaintiff reported that she had not seen a doctor for seizures since 2003. (Tr. 179). Plaintiff was reported by the Baxter Regional Medical Center to not having had a seizure and not taking any medicine since 2006. (Tr. 393). Finally, at the hearing, Plaintiff was equivocal about how many seizures she would have when taking medication. "When I am taking the medicine, I have seizures maybe once in a while," and when asked for clarification, Plaintiff said - "[m]aybe once every week?" (Tr. 51).

Based upon the record as a whole, and for reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC findings and the weight he gave to the opinions of Dr. Brownfield and Dr. Smith.

### C. Whether Substantial Evidence Support the ALJ's Findings:

Plaintiff asserts that his previous arguments support the fact that there was not substantial evidence to support the ALJ's findings. However, based upon the Court's foregoing

analysis, as well as the reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's findings.

### IV.    Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 2nd day of July, 2013.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE